FILED

2022 Sep-26  PM 12:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| TIFFANY SHEREE HUGHES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  4:20-cv-01555-JHE |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

Plaintiff Tiffany Sheree Hughes ("Hughes") seeks review, pursuant to 42 U.S.C. § 405(g) and § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability and disability insurance benefits ("DIB").  (Doc. 1).   Williams timely pursued and exhausted her administrative remedies.  This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

Hughes filed an application for a period of disability and DIB on February 9, 2018, alleging disability beginning on February 8, 2018.  (Tr. 21, 160-61).  The Commissioner initially denied Hughes's claim (tr. 75), and Hughes requested a hearing before an ALJ (tr. 84).  After a November 18, 2019 hearing, the ALJ denied Hughes's claim on December 11, 2019.  (Tr. 30).  Hughes sought

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties in this case have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 11).

review with the Appeals Council, but it denied her request for review on August 8, 2020.  (Tr. 1).

On that date, the ALJ's decision became the final decision of the Commissioner.  On October 6,

2020, Hughes initiated this action.  (Doc. 1).

Hughes was 34 years old on the date the ALJ rendered her decision.  (Tr. 38, 40). Hughes

has a GED and past relevant work as a medical assistant.  (Tr. 29, 41).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed.   The

function of this Court is to determine whether the decision of the Commissioner is supported by

substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales*, 402

U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir.

2002).  This court must "scrutinize the record as a whole to determine if the decision reached is

reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239

(11th Cir. 1983).  Substantial evidence is "such relevant evidence as a reasonable person would

accept as adequate to support a conclusion."  *Id.*  It is "more than a scintilla, but less than a

preponderance." *Id.*

This Court must uphold factual findings that are supported by substantial evidence.

However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity

attaches to the ALJ's determination of the proper legal standards to be applied.  *Davis v. Shalala*,

985 F.2d 528, 531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the law,

---

[2] In general, the legal standards applied are the same whether a claimant seeks supplemental security income ("SSI") or DIB. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

2

or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3]  The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;
(2)     whether the claimant has a severe impairment;
(3)     whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)     whether the claimant can perform his or her past work; and
(5)     whether the claimant is capable of performing any work in the national economy.

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of January 18, 2017.

3

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Hughes had not engaged in substantial gainful activity since February 8, 2018, her alleged onset date. (Tr. 24). At Step Two, the ALJ found Hughes has the following severe impairments: systemic lupus erythematosus and obesity. (Tr. 24). At Step Three, the ALJ found Hughes does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 26).

Before proceeding to Step Four, the ALJ determined Hughes's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Hughes has the RFC

> to perform light work as defined by 20 C.F.R. § 404.1567b except the claimant can do no climbing of ladders, ropes, and scaffolds. She can frequently climb stairs, balance, stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to temperature extremes and avoid all exposure to unprotected heights and moving machinery.

4

(Tr. 27).  At Step Four, the ALJ determined Hughes could perform her past relevant work as a medical assistant.  (Tr. 29).  Therefore, the ALJ did not proceed to Step Five.  Instead, the ALJ found Hughes had not been under a disability and denied her claim.

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Williams*, 615 F.2d 1103, 1106 (5th Cir. 1980)).  The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Hughes raises two objections to the Commissioner's decision: (1) the ALJ failed to properly assess the opinion of her treating physician, Dr. George Harris; and (2) the ALJ failed to properly evaluate her subjective complaints of pain.  As discussed below, the ALJ's assessments of Dr. Harris's opinion and of Hughes's pain testimony were supported by substantial evidence.

### A. The ALJ Did Not Err by Disregarding Dr. Harris's Opinion

Hughes's first argument is that the ALJ inappropriately assessed the opinion of treating physician Dr. Harris.  (Doc. 14 at 5-8).  Dr. Harris, a physician at Northside Medical Associates, submitted a letter on July 11, 2019, stating in full:

> Tiffany Berry, DOB 10/05/1985 has been coming in out clinic for over 5 years. She suffers from lupus erythematosus, resulting in joint pain, chronic rashes and severe fatigue.  In my professional opinion, this patient could not withstand regular employment.  For further questions you may contact my office at (205) 467-7654.

(Tr. 492).   The ALJ noted Dr's Harris's statement "was submitted . . . without a functional assessment," and disregarded it as "an opinion on an issue reserved to the commissioner."   (Tr. 29).

As the Commissioner notes (doc. 15 at 17), Hughes relies on law that predates the most recent regulatory framework an ALJ applies to evaluate opinion evidence. Specifically, Hughes argued the "treating physician rule" applies here.   This rule was part of the regulatory framework applicable to applications filed before March 27, 2017.   Under those regulations (and Eleventh Circuit caselaw interpreting them) a treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary."   *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997), in turn citing 20 C.F.R. § 404.1527(d)(2)) (internal quotations omitted).   However, the Eleventh Circuit has recently held that the Commissioner's subsequent regulations eliminating the treating physician rule also abrogated the caselaw on which Hughes relies.   *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 896 (11th Cir. 2022).   Instead, for claims filed on or after March 27, 2017, such as this case, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ is required to "articulate in [her] determination or decision how persuasive [she] find[s] all of the medical opinions," 20 C.F.R. § 404.1520c(b), taking into account supportability, consistency, relationship with the claimant, length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship, specialization, and "other factors." 20 C.F.R. § 404.1520c(c).   Under the new regulations, an ALJ is required to explain how she considered the supportability and

consistency factors, and may explain how she considered the remaining factors.  20 C.F.R. § 404.1520c(b)(2).

Because the ALJ was not required to apply the treating physician rule, Hughes's argument that the ALJ failed to show "good cause" for rejecting Dr. Harris's statement cannot support reversal.  In any case, the ALJ rejected Dr. Harris's statement on the basis that it addressed only an issue reserved to the Commissioner.  Under the regulations the ALJ applied, "statements that [a claimant is or is not] disabled, blind, able to work, or able to perform regular or continuing work" are statements on issues reserved for the Commissioner.  20 C.F.R. § 404.1520b(c)(3)(i).  The regulations provide that such statements are "inherently neither valuable nor persuasive," and as such an ALJ does not have to "provide any analysis about how [the ALJ] considered such evidence in . . . determination or decision, even under § 404.1520c." 20 C.F.R. § 404.1520b(c).  The ALJ correctly determined that Dr. Harris's statement includes no functional limitations and is simply a statement that Hughes cannot work.  Since that determination was correct, the ALJ was not required to apply the new standard for evaluating opinion evidence or provide any further analysis at all.  Therefore, the ALJ did not err by disregarding Dr. Harris's statement.

**B. The ALJ Appropriately Evaluated Hughes's Subjective Complaints**

Finally, Hughes contends the ALJ should have found additional non-exertional limitations based on her subjective complaints.  When a claimant alleges disability based on claims of pain or other symptoms, she must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of her alleged symptoms or evidence establishing that her medical condition could be reasonably expected to give rise to the alleged symptoms.  *See* 20 C.F.R. § 404.1529; *Dyer v. Barnhart*, 395 F.3d 1210 (11th Cir. 2005).  If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but

the claimant establishes that she has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effects on the claimant's ability to work. *See* 20 C.F.R. § 404.1529(c); *Wilson v. Barnhart*, 284 F.3d 1219, 1225–26 (11th Cir. 2005).  If the ALJ does not fully credit the claimant's subjective pain testimony, the ALJ's decision must articulate the reasons and those reasons must be supported by substantial evidence.  *Hale v. Brown*, 831 F.2d 1007, 1012 (11th Cir. 1987).  Further, an ALJ may not "pick and choose among a doctor's records to support his own conclusion." *Chambers v. Astrue*, 671 F. Supp. 2d 1253, 1258 (N.D. Ala. 2009).

In analyzing, Hughes's statements regarding the intensity, persistence, and functionally limiting effects of her alleged symptoms, the ALJ referenced the proper regulations and rulings.[4] (Tr. 27-28).  The ALJ found that Hughes's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but Hughes's statements concerning the intensity, persistence, and limiting effects of these symptoms were not consistent with the medical evidence of record. (Tr. 28).  Specifically, the ALJ found that Hughes's pain complaints were inconsistent with both objective medical evidence Hughes's reports of her daily activities. (Tr. 27–29).

Hughes alleged severely limited physical functioning due to joint pain, swelling, and shortness of breath.  (Tr. 28).  Hughes indicated she could not walk more than thirty yards before

---

[4] Specifically, the ALJ cited 20 C.F.R. § 404.1529 and Social Security Ruling 16-3p.  SSR 16-3p directs the ALJ to consider a number of factors before making a conclusion regarding the validity of a claimant's testimony and resulting limitations, including (1) the individual's daily activities, (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms, (3) factors that precipitate and aggravate the symptoms, (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms, (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms, (6) measures other than treatment the individual uses or has used to relieve pain or other symptoms, and (7) any other relevant factors concerning the individual's functional limitations and restrictions.

needing to stop and rest, daily swelling and pain in her joints, and that she was confined to her house fifteen to twenty days per month due to her physical symptoms.[5] (*Id.*). The ALJ found some of these allegations were supported by the record. The ALJ noted Hughes had been treated for systematic lupus erythematosus and "[e]xaminations have noted tenderness in her joints and her lumbar spine" by citing to records from her rheumatologist (Tr. 28, 371, 399, 485), and that "[Hughes] was referred to pain management to help with her symptoms." (Tr. 28, 507). Additionally, the ALJ noted that Hughes was medicated with steroids, prednisone, and Percocet. (Tr. 398, 498). Hughes's obesity further compounded her symptoms and "cause[d] greater pain." (Tr. 28).

However, the ALJ also found the record undermined Hughes's testimony as to the effect of these symptoms. (*Id.*). As to pain preventing Hughes from walking more than thirty yards or from leaving her house, the ALJ pointed to a number of records in which Hughes was observed as being in no acute distress. (*Id.*). The ALJ also identified multiple treatment records showing normal extremity examinations with no significant swelling, full range of motion, and intact motor sensory functions. (*Id.*). The ALJ noted that "at times" Hughes had no joint pain or tenderness and "[o]ftentimes" no fatigue. (*Id.*). The ALJ observed that Hughes failed to report "arthralgias, joint pain, back pain, difficulty walking, weight loss, shortness of breath, migraines, fatigue, swelling, or weakness" at "many appointments." (*Id.*). Finally, the ALJ noted Hughes's activities of daily living were not consistent with the limitations Hughes alleged. (Tr. 29).

Hughes argues that the ALJ "picked and chose" specific parts of the record that were inconsistent with Hughes's allegations and ignored the "totality of the evidence" that supports

---

[5] The ALJ also noted Hughes alleged a number of mental symptoms (tr. 28), but Hughes does not appear to challenge the decision as it pertains to those symptoms.

Hughes's allegations of pain. (Doc. 14 at 10). Specifically, Hughes points to her complaints of joint pain, stiffness, swelling, and tenderness in her wrists, elbows, knees, and ankles on January 8, 2018 at Southview Medical Center. (Doc. 14 at 11; Tr. 340). Hughes also points to her frequent visits with her rheumatologist in 2018 where she reported that her joint problems "had really worsened" and where she complained of increased pain and tenderness in her wrists, elbows, feet, and ankles. (Doc. 14 at 12–13; Tr. 371, 374, 409). Throughout 2018 and into 2019, Hughes had improvement in her arthritic symptoms. (Doc. 14 at 13; Tr. 397, 410, 413–14). Originally prescribed methotrexate and prednisone for her symptoms, which was credited for her partial improvement, she discontinued the use of methotrexate on August 15, 2018 because of the increased headaches and began leflunomide, another antirheumatic medication. (Tr. 408–11). Throughout 2019, Hughes's rheumatologist continued to document tenderness in her wrists, elbows, feet, and ankles with joint pain that grew more severe as time progressed. (Doc. 14 at 13; Tr. 397–99, 483–45). During her last visit to her rheumatologist on April 22, 2019, Hughes did complain of increased arthritic symptoms and her prednisone prescription was increased. (Tr. 483–84.). However, the ALJ relied on Hughes's frequent self-reports to her treating physicians that she did not have joint pain (tr. 455, 499, 503, 537, 547, 551), joint swelling (tr. 436, 443, 448, 451, 495, 499, 503, 547, 551), and had normal range of motion (tr. 436, 443, 448, 503)[6] in determining that her allegations of pain were not consistent with the medical evidence of record. (Tr. 28.). Further, there were multiple instances where Hughes reported no fatigue (tr. 436, 438, 440, 445, 448, 495, 503, 506.) and where she was observed to be ambulating normally (tr. 399, 448, 495,

---

[6] There is only one instance in the medical records where Hughes's range of motion is described as anything other than normal. During a visit to STV Primary Care Springville on April 22, 2019, movement of Hughes's extremities was described as "slow." (Tr. 507).

503, 538, 547, 551.). Although the ALJ did not specifically mention it, many of these visits took place after Hughes's last complaint of worsening arthritic symptoms to her rheumatologist on April 22, 2019.  (*See, e.g.,* tr. 495 (routine check-up on July 29, 2019), 503 (lupus follow-up on May 6, 2019)).  The ALJ did not err by relying on these reports to determine Hughes was not as limited as her testimony indicated.

As to Hughes's activities of daily living, Hughes argues that the ALJ's description was "selective" and "disingenuous." (Doc. 14 at 15.). Hughes alleged on her function report that she was unable to cook for herself most days of the month, unable to complete a load of laundry in a timely manner, unable to assist her children with their homework, and unable to do various other chores both inside and outside the home. (Doc. 14 at 15; tr. 202–07).   However, as the ALJ referenced, Hughes self-reported during medical visits for treatment she was "relatively active with her children" and "was able to complete her activities of daily living without assistance." (Tr. 395, 536). The ALJ further cited instances in the record where Hughes reported walking, climbing stairs, dressing or bathing, and getting occasional exercise. (Tr. 447, 510, 547).  The ALJ found, not unreasonably, that this evidence "fails to reflect the extent of the limitation alleged by [Hughes]." (Tr. 29).  While Hughes contends the ALJ "failed to accurately describe the daily activities she finds inconsistent with the Plaintiff's allegations" (doc. 14 at 16), Hughes does not argue that these self-reports do not provide substantial evidence supporting the ALJ's determination.

Although portions of the record support Hughes's allegations of disabling pain, the undersigned cannot re-weigh the evidence.  *Bloodsworth* 703 F.2d at 1239. Because there is substantial evidence to support the ALJ's determination that Hughes's allegations of disabling

symptoms were not consistent with the medical evidence, the Commissioner's decision is due to be affirmed.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Hughes's claim for period of disability and disability insurance benefits is **AFFIRMED**.

DONE this 26th day of September, 2022.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE